Tibor Nagy, Jr., SBN 007465
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C., #00504800
3430 East Sunrise Drive, Suite 220
Tucson, Arizona 85718
Telephone: (520) 544-0300
Tibor.Nagy@ogletreedeakins.com
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martha Pennington, individually and on Behalf of similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>Pizza Venture of Tucson LLC, Pizza Venture of San Antonio, L.L.C., Pizza Venture West Texas, L.L.C. and Clark Mandigo,<br><br>Defendants. | No. 4:18-cv-00236-TUC-JGZ<br><br>**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

Defendants Pizza Venture of Tucson LLC, Pizza Venture of San Antonio, L.L.C., Pizza Venture of West Texas, L.L.C. and Clark Mandigo ("Defendants"), in lieu of Answering, file this Motion and accompanying Memorandum in Support of Defendants' Motion to Compel Arbitration. Plaintiff Martha Pennington ("Plaintiff") and her employer entered into a valid and enforceable agreement that require them to arbitrate, on an individual basis, rather than litigate, disputes arising from Plaintiff's employment or the termination thereof. As a result, this Court should compel individual, bilateral arbitration of Plaintiff's claims. Defendants submit their Memorandum of Law in Support of this Motion, which is incorporated herein by reference.

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Defendants Pizza Venture of Tucson LLC, Pizza Venture of San Antonio, L.L.C., Pizza Venture of West Texas, L.L.C. and Clark Mandigo ("Defendants") move to compel arbitration of Plaintiff Martha Pennington's claims that she makes on her own behalf, and purportedly on behalf of those with whom she claims she is similarly situated, for unpaid minimum wages in violation of the Fair Labor Standards Act, 28 U.S.C. §§ 201, et seq., and Arizona's Employment Practices and Working Conditions law, A.R.S. §§ 23-201, et seq. More specifically, Defendants seek to compel bilateral arbitration because Plaintiff has waived her right to pursue her claims as a class and/or collective action.

Plaintiff (as well as putative plaintiffs and class members) and her employer entered into an agreement requiring Plaintiff to resolve, through individual arbitration, claims for "wages or other compensation." The Supreme Court recently concluded that valid and enforceable arbitration agreements waiving class-wide relief, such as the agreement between Plaintiff and her employer, should be enforced according to its terms. For these reasons, Defendants ask the Court for its order compelling Plaintiff's claims to bilateral, individual arbitration.

**I. Background**

According to Plaintiff, between June 2017, and May 2018, she was employed by Defendants as a pizza delivery driver. *Doc.* 1, Compl. at ¶ 9. Plaintiff entered into an arbitration agreement (the "Agreement") whereby she, and her employer, expressly agreed to resolve through arbitration any disputes, including those involving wages or other compensation. Ex. A, pp. 7-9. In particular, on November 11, 2017, Plaintiff electronically signed the Agreement, which provides, in relevant part:

> *The Company and I agree that all legal claims or disputes covered by the Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive final remedy for resolving any such claim or dispute.* We also agree that any arbitration between the

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

Company and me is of an individual claim and that any such claim subject to arbitration will not be arbitrated on a collective or a class-wide basis; provided however, that this provision shall not apply to any prospective class or collective action based on alleged violations of wage and hour laws if, and only if, such claim should cause the agreement to arbitrate to be unenforceable under the prevailing law. . . . No signature shall be required for the policy to be applicable. *Legally protected rights covered by this Arbitration Agreement are all legal claims, including: claims for wages or other compensation;* claims for breach of any contract, covenant or warranty (expressed or implied); tort claims (including, but not limited to, claims for physical, mental or psychological injury, but excluding statutory workers compensation claims); claims for wrongful termination; sexual harassment; discrimination (including, but not limited to, claims based on race, sex, sexual orientation, religion, national origin, age, medical condition or disability, whether under federal, state or local law); claims for benefits or claims for damages or other remedies under any employee benefit program sponsored by the Company (after exhausting administrative remedies under the terms of such plans); "whistleblower" claims under any federal, state or other governmental law, statute, regulation or ordinance; claims for a violation of any other non-criminal federal, state or other governmental law, statute, regulation or ordinance; and claims for retaliation under any law, statute, regulation or ordinance, including retaliation under any workers compensation law or regulation.

*Id*. at pp. 7-8.

## II. Argument and Authorities

The Federal Arbitration Act (the "FAA") states that "A written provision in any . . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Indeed, the Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); see also *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2001) (Section 2 of the FAA reflects "a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract. In line with these principles, courts must place arbitration

agreements on an equal footing with other contracts, and enforce them according to their terms.") (internal citations and quotation marks omitted)).

In its May 21, 2018 decision, the Supreme Court determined that pursuing a claim as a class or collective action does not constitute an avoidance of an arbitration agreement. *Epic Systems Corp. v. Lewis,* No. 16-285, 584 U.S. pp. 8-9, 16-17, 25 (2018). More specifically, it concluded Congress intended the FAA to apply in all cases, including putative class and collective actions, when an employee and employer agreed to resolve such disputes through individual arbitration. *Id*.

### A.  Under the FAA, the Agreement is Enforceable

"The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (internal quotation marks omitted). If the parties entered into a valid agreement that encompasses the dispute, "then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party resisting arbitration has the burden to show the claims are not suitable for arbitration. *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 91-92 (2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), *superseded by statute on other grounds.*

#### 1.  Plaintiff Was Involved with Interstate Commerce.

According to the Supreme Court, Section 2 of the FAA reflects Congress' intent to extend its coverage under the Commerce Clause to the fullest extent possible. *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 268 (1995). To effectuate Congress's goal of encouraging alternative dispute resolution, the Court must give wide berth when determining if a transaction or contract "involves" commerce. Id. Consequently, under the FAA, a matter "involves" commerce when it merely "affects" it. *Id*. Moreover, the

FAA's coverage extends to employment contracts involving commerce. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 122–23 (2001).

Here, the corporate Defendants are Texas companies with their principal place of business in Texas. They operate franchise Papa John's stores in Arizona and in other states, thus Plaintiff was employed by Defendants involved with interstate commerce. *See also* Doc. 1, at ¶ 49 (alleging Defendants are engaged in interstate commerce). The stores that are owned and operated by the corporate Defendants use materials, such as food items and Papa John's branding materials, that came from outside the state of Arizona. See *Foster v. Turley*, 808 F.2d 38, 40 (10th Cir. 1986) (finding that an arbitration agreement involved interstate commerce in light of "the interstate nature of the production and marketing involved"); *Moncrief v. Terminix Intern. Co. Ltd. Partnership,* 2006 WL 1764080 at *1 (D. Kan. Jun. 27, 2006) (observing an arbitration agreement between a sales representative and a national pest control chain with branch offices throughout the United States involved interstate commerce); *see also Allied-Bruce*, 513 U.S. at 282 (concluding that an arbitration agreement involved interstate commerce because the company was multistate in nature and used materials that came from outside the state where the work was to be performed). Defendants rely on the services of employees like Plaintiff to represent the Papa John's brand, and use materials from outside the state of Arizona to do so. Thus, Plaintiff's employment relationship with Defendants directly involved and affected interstate commerce.

      2.  <u>The Agreement is a Valid Contract</u>.

Plaintiff, as well as putative plaintiffs and class members, are subject to arbitration agreements requiring them to arbitrate their personal disputes arising from their employment. The validity of the underlying Agreement is determined by general principles of contract law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-67 (1996); see also Perry v. Thomas, 482 U.S. 483, 492 n. 9 (1987) (noting "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning validity, revocability, and enforceability of contracts generally"). Under

Arizona law[1], "a contract is an agreement which creates an obligation; that mutual consent is a requisite to the creation of a contract, and that it becomes binding when a proposition is made on one side and accepted on the other." *Malcoff v. Coyier*, 484 P.2d 1053, 1055 (Ariz. Ct. App. 1971).

As a condition of her continued employment, Plaintiff agreed to arbitrate her claims, including those involving "wages and other compensation." Ex. A, p. 8. On November 11, 2017, Plaintiff acknowledged and signed the Agreement; under Arizona law, an electronic signature has the same binding effect as a handwritten signature. A.R.S. § 44-7007 (legal recognition of electronic records, signatures and contracts). Moreover, a party who voluntarily signs an agreement has a duty to read the terms; the failure to read an agreement does not relieve a party "from the consequences of his own carelessness." *Hofmann Co. v. Meisner*, 497 P.2d 83, 86-87 (Ariz. Ct. App. 1972) *superseded by statute on other grounds*. Thus, the Agreement, on its face, creates an enforceable contract. No more is required under the FAA and Arizona law, particularly in light of the presumption in favor of arbitration.

Finally, the Agreement is supported by consideration. The Agreement mutually binds both Plaintiff *and* her employer to arbitrate employment-related disputes, including those involving "wages and other compensation." Ex. A, p. 7 ("The Company and I agree that all legal claims or disputes covered by the Agreement must be submitted to binding arbitration that will the sole and exclusive final remedy for resolving any such claim or dispute."); *see Carroll v. Lee*, 712 P.2d 923, 926 (Ariz. 1986) ("monetary consideration is not always required as consideration. Adequate consideration consists of a benefit to the promisor and a detriment to the promisee.") (citations omitted). Moreover, Plaintiff's continued employment with Defendants would not have been considered had she not agreed to arbitration and, therefore, she received a benefit in return for this Agreement. *Carroll*, 712 P.2d at 926; see also *Mattison v. Johnston,* 730 P.2d 286, 290 (Ariz. Ct.

---

[1] Arizona contract law applies because Plaintiff was employed in Tucson. Doc 1 at ¶9.

App. 1986) (a promise of continued and future employment is sufficient consideration for an agreement not to compete). Thus, under Arizona contract law, the Agreement between Plaintiff and her employer is valid and enforceable.[2]

**II. The Agreement and the Prevailing Law Require Arbitration of Plaintiff's Claims on an Individual Basis.**

Additionally, the Agreement, as well as recent Supreme Court jurisprudence, require this Court to compel arbitration of Plaintiff's claim on an individual basis. *Epic Systems Corp.,* 584 U.S. at p. 25. In *Epic Systems*, the Supreme Court expressly concluded that agreements requiring individual arbitration of claims should be enforced according to their terms.

Here, the Agreement includes an express class and collective action waiver. Ex. A, p. 7. Although the Agreement ostensibly carves out class or collective action based on alleged violations of wage and hour laws, the extent of the carve-out is limited to those situations when such a claim would "cause the agreement to arbitrate to be unenforceable under the prevailing law." Ex. A, p. 7.

The prevailing law does not invalidate the Agreement; instead, it validates agreements to arbitrate, including class action waivers. *Epic Systems Corp.*, 584 U.S. at 9, 16-17, 25. Even if the Agreement were silent about waiving class arbitration, the Supreme Court previously concluded the FAA does not allow arbitrators to impose class arbitration on parties who have not contractually agreed to it. *Stolt-Nielsen, S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 667 (2010); see also *Eshagh v. Terminix Int'l Co.*, 588 Fed. App'x. 703, 704 (9th Cir. 2014) (recognizing silence in underlying agreement regarding class-wide arbitration generally indicates it is not authorized by affirming order striking class allegations when arbitration agreement did not mention

---

[2] Plaintiff filed this suit bringing claims for unpaid minimum wages compensation. Such claims, as evidenced by the allegations in the Complaint, are expressly encompassed by the Agreement. Ex. A, p. 8 (claims to be arbitrated include those related to "wages or other compensation.").

class arbitration). Therefore, the Court should enforce the Agreement by compelling arbitration of Plaintiff's claim on an individualized basis.

### III. Conclusion

Defendants have demonstrated (1) Plaintiff entered into a valid and enforceable agreement to arbitrate that includes a class action waiver; (2) the Agreement encompasses Plaintiff's claims; and (3) Plaintiff has not honored her obligation under the Agreement. Because the Agreement expressly waives any collective or class-wide arbitration, Defendants are entitled, under the FAA, to an order compelling Plaintiff to pursue her claims against Defendants, if at all, through bilateral arbitration under the terms and conditions of the Agreement.

WHEREFORE, Defendants Pizza Venture of Tucson LLC, Pizza Venture of San Antonio, L.L.C., Pizza Venture of West Texas, L.L.C. and Clark Mandigo respectfully requests that this Court grant its Motion and dismiss this action or, in the alternative, compel individual, bilateral arbitration and stay all further proceedings in this action until arbitration has been completed, and for such further relief as this Court deems just and proper.

DATED this 29th day of May, 2018.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

By  s/Tibor Nagy, Jr.
    Tibor Nagy, Jr.
    3430 East Sunrise Drive, Suite 220
    Tucson, Arizona 85718
    Attorneys for Defendants

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of May, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

Matthew Haynie
Jay Forester
Forester Haynie PLLC
1701 N. Market St., #210
Dallas, TX 75202
Attorneys for Plaintiff


/s    Barbara A. Stamm

34076223.1